IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANDREW DAVIS, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-632-GMS |
| | ) |
| LINDA THOMAS, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM**

**I. INTRODUCTION**

The plaintiff, Andrew Davis, Sr. ("Davis"), who appears *pro se*, filed this lawsuit

pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. (D.I. 1, 11.) The court

dismissed the original complaint, and gave Davis leave to file amend. Thereafter, the defendant

Linda Thomas ("Thomas") filed the pending motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(6). (D.I. 12.) Davis opposes the motion and moves to strike Thomas' defense. (D.I. 15.)

**II. BACKGROUND**

On May 31, 2007, Davis filed this lawsuit in the Superior Court of Delaware in New

Castle County alleging violations of his civil rights pursuant to 42 U.S.C. §§ 1981, 1983, 1986,

2000c, and 2000c-8.[1] The court dismissed the original complaint and on October 2, 2008, Davis

filed an amended complaint against Thomas pursuant to 42 U.S.C. § 1983. (D.I. 11.) Thomas is

the principal of the Evan G. Shortlidge Academy, an elementary school within the Red Clay

Consolidated School District ("the school district") in the State of Delaware. Davis alleges

violations of his right to due process, equal protection, privacy and retaliation for the exercise of

---

[1]The defendants removed the case to this court on October 15, 2007. (D.I. 1.)

his First Amendment rights.

Davis alleges that his son was offensively touched by a fellow classmate on two separate occasions, November 6 and November 16, 2006. Following the first incident, Davis spoke with Thomas. An individual named Rodgers, not otherwise identified, walked in on the meeting, left the room and stood near the office door, and allegedly eavesdropped. Davis alleges that "Thomas allowed the infringement of privacy and due process by not correcting or stopping [the] act of infringement." Davis requested due process and an investigation.

Following the second incident, Davis alleges that he exercised his right to due process and crisis intervention per the code of conduct and state guidelines.[2] He requested that the offending student be removed from his son's classroom, but Thomas denied the request. Instead, she wanted the offending student to speak to a guidance counselor rather than the state crisis intervention specialist as prescribed by the school district. Thomas indicated she was trying to find a place for the offending student and that the student would be moved by November 20, 2006 but, as of that date, he remained in the classroom. Davis alleges that by this time he was beginning to experience retaliation from Thomas because she did not afford him an investigation

_____

[2]Davis relied upon the code of conduct and the parent/student handbook in framing his claims against Thomas. In her reply, Thomas submits portions from both. (D.I. 14, exs. A, B.) "In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court generally considers only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. A document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.' The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document. Considering such a document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on notice that the document will be considered." *Lum v. Bank of Am.*, 361 F.3d 217 n.3 (3d Cir. 2004) (internal citations omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

or due process, was in breach of contract via the code of conduct, and was not following the code, state law, or due process clause. Davis exercised his First Amendment rights by informing Thomas that he intended to petition the school parents regarding the issue and how it was handled pursuant to the school's grievance policy. As of November 27, 2006, the offending student remained in the classroom with Davis' son. Three days later, Davis met with the school district for a grievance hearing. At that time the school district disputed that the offensive touching occurred.[3] Davis requested an investigation with a written outcome. He alleges the meeting was a charade, with no real action taken. The original complaint states that the offender is no longer in the same room as Davis' son and, at some point in time, he was moved to a room two doors away from his son's classroom. (D.I. 1.)

On December 6, 2006, Davis made an effort to walk his son to class and to sit in his classroom. Davis alleges that Thomas began to retaliate against him by holding Davis to false school policies "such as checking in with her when dropping off kids." By May 7, 2007, the retaliation had progressed to the point that Davis was not allowed to sit in class or walk his son to class, even though the school maintained an open door policy. Davis was subsequently barred from the classroom while female parents were allowed to walk their children to class. Davis alleges that he was denied access to the classroom even though he abided by the visitor's protocol. On May 9, 2007, Davis requested "fair and equal protection" from the false rules.

At some point in time Davis complained to Thomas of the alleged retaliation noting that it occurred after he exercised his First Amendment rights. He requested a grievance conference

---

[3]The original complaint alleges that the school district did not view the contact as offensive touching. (D.I. 1.)

and equal protection, but Thomas denied the request. On May 11, 2007, Thomas told Davis that she was incorrect about the visitor's protocol and "upheld" the open door policy. Thomas admitted it was her fault for allowing the staff and the staff's spouses to walk through the halls and sit in classrooms without visitor's badges. Davis alleges that Thomas apologized for discriminating against him when she allowed female parents to freely roam freely the halls, but barred him from the same action. Davis seeks unliquidated damages and punitive damages.

Thomas moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. (D.I. 12.) She argues that the official capacity claims are barred by the Eleventh Amendment; the amended complaint does not contain individual capacity allegations; should the court find there are individual capacity allegations, Thomas is entitled to qualified immunity; Thomas did not retaliate against Davis for the exercise of his First Amendment rights; and the amended complaint fails to state a claim that Thomas violated Davis' right to privacy and due process. Davis responded by filing a motion to strike. (D.I. 13.) In reading the motion to strike, it is evident that it is actually a response to the motion to dismiss. Thomas filed a reply and Davis filed a sur-reply, entitled as a reply in support of motion to strike but docketed as a motion to strike. (D.I. 14, 15.)

## III. DISCUSSION

### A. Standard of Review

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S.

89, 93 (2007). "To survive dismissal, a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,
–U.S.–, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570
(2007)).

A claim is facially plausible when its factual content allows the court to draw a
reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility
standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*
"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops
short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* The
assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the
elements of a cause of action supported by mere conclusory statements." *Id.* "[W]here the well-
pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the
complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* (quoting
Fed. R. Civ. P. 8(a)(2)). Because Davis proceeds *pro se,* his pleading is liberally construed and
his amended complaint, "however inartfully pleaded, must be held to less stringent standards
than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations
omitted).

## B. Eleventh Amendment

Thomas contends that, as the principal of a public school in the Red Clay School District
in the State of Delaware, she is a state official and entitled to Eleventh Amendment immunity.
The protections of the Eleventh Amendment, however, are inapplicable to the school district. In
Delaware, school boards and districts are semi-autonomous local political entities and not state

-5-

entities entitled to Eleventh Amendment protection. *Kirschling v. Lake Forest Sch. Dist.*, 687 F. Supp. 927, 935 (D. Del. 1988); *Smith v. New Castle County Vocational-Technical Sch. Dist.*, 574 F. Supp. 813, 818-19 (D. Del. 1983); *Morris v. Board of Educ. of the Laurel Sch. Dist.*, 401 F. Supp. 188, 205 (D. Del. 1975); *King v. Caesar Rodney Sch. Dist.*, 396 F. Supp. 423, 427 (D. Del. 1975); *Beck v. Claymont Sch. Dist.*, 407 A.2d 226, 229 (Del. Super. Ct. 1979).

Thomas' position has no basis in law. Therefore, the court will deny her motion to dismiss on the basis of Eleventh Amendment immunity.

## C. Individual Capacity

Thomas moves for dismissal on the grounds that the amended complaint does not raise claims against her in her individual capacity. She argues that dismissal is appropriate because the amended complaint makes no reference to any personal actions taken by her, the only factor supporting allegations of individual liability is Davis' demand for punitive damages, and said prayer for punitive damages is insufficient.

The Third Circuit employs a "course of proceedings' test to determine whether a plaintiff in a § 1983 action may proceed with both an official and individual capacity suit when it is unclear what his intentions are from his complaint." *Casilla v. New Jersey State Prison*, Civ. No. 05-4590 (FLW), 2006 WL 2534416, at \*7 n.3 (D.N.J. Aug. 31, 2006) (*citing Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd on other grounds,* 502 U.S. 21, 24 n.\* (1991). Under this test, the court may examine "the substance of the pleadings and the course of proceedings in order to determine whether the suit is for individual or official liability," and is not limited by the presence or absence of language identifying capacity to sue on the face of the complaint. *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993). Factors considered include "the nature of the

-6-

plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity." *Moore v. City of Harriman*, 272 F.3d 769, 772 n.1 (6th Cir. 2001). The "underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995).

It appears that Davis intended to name Thomas individually, as well as in her official capacity. Davis includes Thomas' name and does not merely refer to her as the school principal. The amended complaint alleges Thomas acted in an intentional manner. Moreover, Davis seeks punitive damages from Thomas which are unavailable when proceeding against an official solely in her official capacity. Finally, in his opposition to the motion to dismiss, Davis states that he intended to sue Thomas individually. Liberally construing the amended complaint, as it must, the court finds that the amended complaint alleges claims against Thomas in her official and individual capacity. For the above reasons, the court will deny Thomas' motion to dismiss on the grounds that she is not sued in her individual capacity.

### D. Retaliation

Thomas argues that Davis has not stated a First Amendment retaliation claim because he has not alleged, nor can he prove, that she subjected him to adverse actions or that the exercise of his First Amendment rights was the motivating factor in Thomas' decision to take adverse actions against him. Davis responds that after he exercised his First Amendment right via correspondence, summary letters, and grievance procedures, he was subjected to retaliatory acts when Thomas manipulated and violated the school's visitor's policy to silence and minimize his complaints and requests for due process.

"[T]o plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). The first prong presents a question of law, and the second prong presents a question of fact. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006).

"[E]xcept for certain narrow categories deemed unworthy of full First Amendment protection – such as obscenity, 'fighting words' and libel – all speech is protected by the First Amendment. That protection includes private expression not related to matters of public concern." *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 282-83 (3d Cir. 2004) (citations omitted). Davis' allegations lead to the conclusion that he engaged in protected activity.

Davis must also demonstrate that he was subjected to adverse actions. Determining what constitutes adverse action is a "fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and retaliator, and the nature of the retaliatory acts." *Brennan v. Nortan*, 350 F.3d 399, 419 (3d Cir. 2003) (quoting *Suarez Corp. Indus.*, 202 F.3d at 686). Courts have acknowledged that alleged retaliatory action against private citizens must reach a certain level in order to be actionable. *See, e.g., Kougher v. Burd*, 274 F. App'x 197, (3d Cir. 2008) (not published) (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000) ("just as the nature of retaliatory action impacts whether a public employee's rights were adversely affected, so too the nature of the retaliatory acts impacts whether those acts were actionable when a private citizen is the speaker and a public official is

-8-

the retaliator.").

Davis alleges that the retaliatory action taken against him (i.e., false school policies) included prohibiting him from sitting in on his son's classes and walking his son to class.[4] Davis' allegations do not rise to the level of substantive constitutional violations - e.g., Davis' attempt to forge constitutional violations from allegations that Thomas denied Davis access to the school - because, even if true, they are *de minimis*.[5] *See e.g., Lovern v. Edwards*, 190 F.3d 648, 656 (4th Cir. 1999) (plaintiff's assertions that school administrators must provide him with boundless access to school property are "obviously without merit"); *Mitchell v. Beaumont Indep. Sch. Dist.*, Civ. No. 1:05-CV-195, 2006 WL 2092585, at *10 (E.D. Tex. 2006) (court cannot locate any decision interpreting the Due Process Clause to create "a parental right of unfettered access to school property or facilities") (emphasis added); *State v. Karr*, 291 A.2d 845, 847 (N.J. Super. Ct. App. Div. 1972) ("the public's right and overriding need to have its schools run without outside interference permits a reasonable limitation on [first amendment rights]"); *State v. Besson,* 266 A.2d 175, 178 (N.J. Super. Ct. App. Div. 1970) ("the interest of the State in

---

[4]Davis, in a conclusory manner, alleges that he was treated differently than female parents. The amended complaint, however, fails to set forth an Equal Protection or disparate treatment claim. While the amended complaint alleges that Thomas apologized to Davis because of the way he was treated, it seems she apologized because the policy was not enforced against the staff and their spouses, but was enforced against Davis.

[5]Davis also alleges that he started to experience retaliation when, by November 20, 2006, Thomas had not afforded him an investigation or due process. The original complaint alleges that on November 30, 2006, he and his spouse were afforded a grievance hearing before the board. Additionally, the amended complaint alleges that Thomas sought a resolution, albeit different than that desired by Davis. Thomas wanted the offender to meet with a guidance counselor rather than a state crisis intervention specialist. In reading the allegations of the complaint and amended complaint it is evident that due process was afforded Davis however unhappy he may be with the outcome.

maintaining an educational system is a compelling one.  Order is necessary to accomplish this . . .").

Other facts lead the court to conclude that the alleged actions of Thomas do not rise above the *de minimis* level.  For example, Davis alleges a "false school policy" because he was required to "check-in" with Thomas when dropping of his children, but the parent/student handbook provides that all adults entering the building must enter through the front door and report to the main office.  (D.I. 14, ex. A.)  Also of import is that Davis' claim that he was not allowed to sit in his son's class or walk him to his room lasted a very short period of time – four days – from May 7, 2007 until May 11, 2007.  The allegations do not suggest impermissible conduct by Thomas sufficient to overcome a Rule 12(b)(6) motion.  For the above reasons, the court will grant the motion to dismiss the retaliation claim against Thomas in her individual capacity.

### E.  Privacy/Due Process

Thomas moves to dismiss Davis' due process and privacy claims as a result of the November 9, 2006 eavesdropping on the grounds that the amended complaint fails to identify the eavesdropper and to provide a reason why it was Thomas' responsibility to stop the eavesdropping.  Thomas further contends that, because he was aware of the eavesdropper, Davis waived his right to privacy.

The Constitution protects an individual's privacy interest in preventing the disclosure of certain types of personal information without consent.  *See Whalen v. Roe*, 429 U.S. 589, 599 (1977).  The fact that Davis was not guaranteed complete privacy during his conversation with Thomas, and he was aware of the fact, did not violate his constitutional right to privacy or

-10-

implicate his right to due process. Moreover, this claim consists of labels and conclusions, without support for the allegations. Indeed, it stops short of plausible allegations that show an entitlement to relief. Accordingly, the court will grant Thomas' motion to dismiss the privacy and due process raised against her in her individual capacity.

### F. Official Capacity

In a suit against a government official in her official capacity, such as the claim against Thomas, "the real party in interest . . . is the government entity and not the named official . . . ." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real part in interest is the entity."). Accordingly, to the extent that Davis asserts a constitutional claim against Thomas in her official capacity, it is treated as a claim against the municipal entity that employs her - that is, the school district. *See Kirshling*, 687 F. Supp. at 935 ("For the purposes of liability under § 1983, the school board and the school district are comparable to municipal entities.").

The school district, however, cannot be held liable under § 1983 for any alleged constitutional torts of Thomas, its employee, by virtue of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). "Instead, a municipality may only be liable for the torts of its employee in one of three ways: First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy, *Pembaur v. City of Cincinnati*, 475 U.S.

469, 480-81 (1986); third, the municipality will be liable if an official with authority has ratified

the unconstitutional actions of a subordinate, rendering such behavior official for liability

purposes, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)." *McGreevy v. Stroup*, 413

F.3d 359, 367 (3d Cir. 2005)

As discussed above, the court will dismiss the claims against Thomas in her individual

capacity because Davis has failed to state a claim that he suffered a violation of his constitutional

rights. Therefore, the court cannot find that any municipal policy or custom led to such a

violation. Moreover, while the amended complaint refers to school district policy, Davis has not

pled unconstitutional policies or customs, that the school district was the "moving force" behind

any alleged constitutional violation, or that he was injured as a result of any school district policy

or custom. Absent any allegation that a custom or policy established by the school district

directly caused harm to Davis, his § 1983 claim cannot stand. Therefore, the court will dismiss

*sua sponte* the official capacity claims.

## IV. CONCLUSION

For the above reasons, the court will grant in part and deny in part Thomas' motion to

dismiss. (D.I. 12.) The court will dismiss the official capacity claims. (D.I. 12.) The plaintiff's

motion to strike is denied as moot. (D.I. 15.)

An appropriate order will be entered.

CHIEF, UNITED STATES DISTRICT JUDGE

_____, 2009

Wilmington, Delaware

-12-

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANDREW DAVIS, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-632-GMS |
| | ) |
| LINDA THOMAS, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

At Wilmington this $\underline{25}$ day of September, 2009, for the reasons set forth in the

Memorandum issued this date

    1. The defendant's motion to dismiss the complaint is **granted in part** and **denied in part**. (D.I. 12.)

    2. The official capacity claims are **dismissed**.

    3. The plaintiff's motion to strike is **denied** as **moot**. (D.I. 15.)

    4. The clerk of court is directed to **close** the case.

CHIEF, UNITED STATES DISTRICT JUDGE